IN  THE  UNITED  STATES  DISTRICT  COURT

FOR  THE  DISTRICT  OF  OREGON

UNITED STATES OF AMERICA,                    Crim. No. 06-60058-AA
                                                  OPINION AND ORDER
             Plaintiff,

      vs.

JOSE VINCENTE HERNANDEZ-
MONTEZ,

             Defendant.
_____

Karin Immergut
United States Attorney
District of Oregon
Kirk Engdall
Assistant United States Attorney
405 E. Eighth Avenue, Suite 2400
Eugene, Oregon 97401
      Attorneys for plaintiff

Craig Weinerman
Assistant Federal Defender
151 W. 7th, Suite 510
Eugene, Oregon 97401
      Attorney for defendant

///

///

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Defendant Jose Vincente Hernandez-Montez filed a motion to suppress evidence and request for a Franks hearing.  The court held oral argument on this matter on April 10, 2008.  After considering the testimony of witnesses, the admitted exhibits and the arguments of counsel, defendant's motion to suppress and request for a Franks hearing is denied.

CHARGES

Defendant is charged in a four-count indictment as follows: two counts of illegal reentry of a deported alien in violation of 8 U.S.C. § 1326; one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and one count of criminal forfeiture in violation of 21 U.S.C. § 853.

BACKGROUND

On May 10, 2006, Immigration and Customs Enforcement (ICE) Special Agent (SA) JW King (Agent King) was contacted by a confidential informant (CI) concerning the defendant here, Jose Vincente Hernandez-Montez.  The CI advised that Hernandez-Montez was an alien with a date of birth (dob) of 5/7/62 who had been deported from the United States and then illegally returned to the United States.  The CI told Agent King that Hernandez-Montez was personally known by the CI and that Hernandez-Montez had served time in federal prison.  The CI further advised Agent King

that Hernandez-Montez went by the name of Alfonso Hernandez and was currently living in a yellow and white trailer located at 5335 Daisy Street, Space #40, Springfield, Oregon.

The CI told Agent King that Hernandez-Montez drove two vehicles which the CI described as a blue and silver Chevrolet pickup with an Oregon license number WLK670 and a red Toyota pickup with the Oregon license number YNJ328. The CI also told Agent King that Hernandez-Montez had been in a motor vehicle accident in April 2006 and used the false name of Alfonso Hernandez.

Finally, the CI advised Agent King that Hernandez-Montez was distributing methamphetamine and stored it in the engine compartment or the tailgate area of his vehicle. The CI had not, however, seen Hernandez-Montez with methamphetamine, but had seen him with a pistol. Agent King had no prior experience with this CI and therefore proceeded to corroborate the CI's information.

On May 10, 2006, Agent King contacted the U.S. Marshals Service (USMS) in Eugene, Oregon regarding Hernandez-Montez. The USMS provided FBI records for an individual named Jose Vincente Hernandez-Montez who had been prosecuted in Eugene, Oregon for the crime of Illegal Re-entry into the United States by an alien. That same day, Agent King conducted a records check in the Central Index System (CIS) and found an individual named Vincente Hernandez-Montez with an assigned alien file. CIS records also

Page 3 - OPINION AND ORDER

showed that Vincente Hernandez-Montez had an assigned FBI number and a dob of 5/7/62. Finally, the CIS records indicated that Vincente Hernandez-Montez had been deported from the United States in 1990, and again in 2000.

Agent King then checked the records of the National Crime Information Center (NCIC) regarding the FBI number and the ICE alien file number and found those numbers were assigned to the same person. That person had a dob of 5/7/62, a 1999 conviction for Illegal Re-entry, and an Oregon State Identification (SID) number of OR7566219. Hernandez-Montez's place of birth and country of citizenship were listed as Mexico. Agent King further determined that Hernandez-Montez had a 1998 conviction for felon in possession of a firearm from Lane County Circuit Court, Oregon, and a 1989 conviction for assault in the second degree from Marion County Circuit Court, Oregon.

Agent King then found out that Oregon License Plate WLK670 was assigned to a 1993 Chevrolet pickup registered to Hilery (sic) Dennis and Sheila Jean Simpson, 2570 Wayside Lane, Springfield, Oregon. The records indicated this vehicle had been sold. DMV records showed Oregon License Plate YNJ328 was assigned to a 1995 Toyota pickup registered to Ubaldo Corona-Rosales, 250 F Street, Apartment #3, Springfield, Oregon.

On May 12, 2006, Agent King conducted another records check and discovered that Jose Vincente Hernandez had a dob of 5/7/62,

with the same FBI and SID numbers as listed above. Hernandez had
an Oregon Drivers License (ODL) number of 4747614 and was last
contacted in 1998. Agent King reviewed the alien file assigned
to Vincente Hernandez-Montes, aka Jose Vincente Hernandez-Montez
and found it contained an order of deportation dated 12/4/89; a
warrant of deportation dated 10/30/90 with a thumb print on the
document; a notice of intent and decision to reinstate a prior
order of deportation, dated, signed and served on 2/2/99; an ICE
warrant of removal/deportation dated 10/6/00 and indicating his
deportation from Laredo, Texas, also attached was his photograph;
conviction documents for Manslaughter 2 and Assault 2 in Jackson
County Circuit Court, Oregon (3/14/89), felon in possession of a
firearm in Lane County Circuit Court, Oregon (3/17/98), and two
counts of eluding examination and inspection in the United States
District Court for the District of Oregon, Crim no 98-60122-AA
(10/99); documents indicating that he entered the United States
by eluding examination and inspection on 10/30/90; and five
photographs of Hernandez.

Agent King completed another records check on Alfonso
Hernandez which indicated Alfonso had a dob of 10/8/63 and ODL
#7547746 and confirmed he had been involved in a motor vehicle
accident on 4/21/06 while driving a red 1995 Toyota pickup,
Oregon License Plate YNJ328. On May 15, 2006, Agent King
obtained Oregon DMV photographs on ODL #7547746 issued to Alfonso

Hernandez-Montez and #4747614 issued to Jose Vincent Hernandez-Montez.  These photographs were compared by Agent King to the photographs found in Jose Vincente Hernandez-Montez's Immigration file.  Agent King believed the photos to be of the same person.

On May 15, 2006, Agent King surveilled the residence at 5335 Daisy Street, Space #40, Springfield, Oregon.  At that location was a white, single wide trailer with yellow trim.  On March 17, 2006, Agent King returned to that location and saw a blue and silver pickup with Oregon License Plate WLK670.  On March 18, 2006, Agent King again returned to the residence and saw the same blue and silver pickup parked in the driveway.  Approximately 45 minutes later, Agent King saw the pickup leave the trailer park with two males inside.  Agent King was able to see the occupants clearly and identified Jose Vincente Hernandez-Montez as the driver, and the same person in both the ODL and alien file photographs.

On March 18, 2006, Agent King checked the Oregon DMV records for any vehicle registered to an individual with either ODL #7547746 or #4747614.  DMV records showed that ODL #7547746 had a 1970 trailer registered in the name of Alfonso Hernandez-Montiel and Miguel Hernandez located at 5335 Daisy Street, Space #40, Springfield, Oregon.

On May 24, 2006, a subpoena was served on Springfield Utility Board (SUB) requesting subscriber information for Jose

Vincente Hernandez-Montez and/or Alfonso Hernandez-Montiel at
5335 Daisy Street, Space #40, Springfield, Oregon.  The
subscriber was listed as Alfonso Hernandez-Montiel.

On June 1, 2006, Agent King again surveilled the Daisy
Street residence and saw the blue and silver pickup parked on the
street in front of the trailer and a red Toyota pickup, Oregon
License Plate YNJ328 parked in the driveway next to the trailer.

On June 5, 2006, Agent King received a search warrant signed
by Magistrate Judge Coffin to search the premises at 5335 Daisy
Street, Space #40 for Jose Vincente Hernandez-Montez, for
documents identifying Hernandez-Montez and for any firearms and
ammunition which may be found at that location.

On June 8, 2006, at 6:15 a.m, the search warrant was
executed.  The police knocked on the door and announced in a loud
voice and in the Spanish language that they were police with a
search warrant.  After waiting approximately one minute, and
receiving no response, police forced open the door and went into
the trailer.  The police immediately called out, and Jesus
Briteno-Hernandez and Jose Jhonny Vasquez-Perez exited from
bedroom number one and Jose Vincente Hernandez-Montez and Lori
Dellene Veilleux exited from bedroom number two.  The police
secured all individuals and conducted a security sweep of the
premises.  During that sweep, OSP Detective Chambers observed a
small plastic bag in plain view on the dresser in defendant's

bedroom.  This plastic bag contained white crystalline substance which, based on Detective Chamber's training and experience, appeared to be methamphetamine.

The police then read the warrant aloud to the occupants and then searched the premises for identity documents, firearms and ammunition.  During the search, Eugene Police Officer Hart found a brown canvas purse in defendant's bedroom that contained a green leafy substance that appeared to be marijuana, along with an Oregon Identification Card #5057870 issued to Lori Dellene Veilleux. Also in defendant's bedroom, Officer Hart observed approximately 27 grams of methamphetamine, a large amount of U.S. currency, two digital scales, small plastic bags and a Smith & Wesson .38 caliber revolver, Serial Number 991493.  One of the scales had a crystalline substance on it that appeared to be methamphetamine.

Based on what was observed during the execution of the warrant, Agent King prepared an affidavit and application for a second search warrant at defendant's residence for drugs and firearms.  Judge Coffin authorized the second warrant and at approximately 12:45 p.m. that day, the second search warrant was executed.  Found under defendant's dresser in his bedroom was a blue canvas bag which contained plastic baggies and four aluminum foil wrapped plastic bags of what appeared to be methamphetamine. Defendant initially denied any knowledge of the items, then

changed his mind and admitted that everything was his.  The
search of the red Toyota pickup revealed three Western Union
receipts and a photocopy of a Social Security Card.  Fingerprints
were taken from defendant at the time of his arrest and compared
to the known print documents in the Immigration file.  Defendant
was found to be the same individual as Jose Vincente Hernandez-
Montez referenced in alien file #A27 927 932, referenced above.
The .38 caliber revolver was later examined by the Bureau of
Alcohol, Tobacco and Firearms and was found to have traveled in
interstate commerce.

<u>DISCUSSION</u>

Defendant moves to suppress all evidence obtained from both
search warrants alleging that the first warrant lacked sufficient
facts to establish probable cause because it relied on the
unreliable and uncorroborated tip of an untested informant, and
because Agent King deliberately or recklessly made false material
statements or omitted material statements in his affidavit.
Specifically, defendant argues that the first warrant omitted
material information that affected the credibility of the
untested informant.  Defendant alleges that the CI was the former
mother-in-law of defendant, that she had a motive to lie about
defendant, and that she never personally observed defendant in
possession of a firearm, or if she did, it was ten years earlier.

Defendant then argues that the second search warrant is also

invalid.  Defendant asserts that because the search warrant
affidavit supporting the second series of search warrants
included information derived from the execution of the first
search warrant, that information must be purged.  Once that
information is purged, the second search warrant affidavit fails
to establish probable cause.

Finally, defendant argues that the good faith exception to
the exclusionary rule does not save the warrants.

<u>LEGAL STANDARDS</u>

The standard for reviewing the sufficiency of an affidavit
is found in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983).  The
reviewing court owes great deference  to the issuing judge's
determination of probable cause.  <u>Id.</u> at 236.  The duty of this
court is simply to ensure that the issuing judge had a
substantial basis for concluding that probable cause existed.
<u>Id.</u> at 238-39.  The Supreme Court holds that, "an informant's
description of illegal activity is sufficient to establish
probable cause if the totality of the circumstances indicate that
the tip is reliable."  <u>Id.</u>  The key to a finding of probable
cause is the "totality of the circumstances," whereby a weak
showing of veracity may be offset by a strong basis for
knowledge, or a weak basis for knowledge may be offset by a
strong showing of veracity.  <u>Id.</u> at 238.

The degree of corroboration required for an informant's tip

varies depending on the number of factors.  If the tip is anonymous, a greater degree of corroboration is required.  If the informant identity is known to the officers, and if the informant provides detailed information based on first-hand observations, less corroboration is required.  Id. at 245 (citing informant's "range of details" as an important indicia of reliability). Deficiencies in an informant's basis of knowledge or reliability may be compensated for by other indicia of reliability.  United States v. Ayres, 924 F.2d 1468 (9th Cir. 1991).

Moreover, in evaluating a search warrant, a magistrate may consider the experience and expertise of the officers involved in the investigation and rely on the conclusions of experienced law enforcement officers regarding where evidence is likely to be found.  United States v. Elliott, 322 F.3d 710, 717 (9th Cir. 2003); see also, United States v. Motz, 936 F.2d 1021 (9th Cir. 1991)(opinions and conclusions of experienced agent are properly considered in determining probable cause).

ANALYSIS

1.  The First Search Warrant

Defendant concedes that the affidavit in support of the first search warrant contained sufficient probable cause to search defendant's residence on Daisy Street, the blue and silver Chevrolet pickup and the red Toyota pickup.  However, the defendant challenges the validity of the warrant authorizing the

Page 11 - OPINION AND ORDER

search and seizure of firearms and ammunition.  This argument is without merit.  I find that the CI's information was well corroborated by Agent King.  Agent King testified specifically that the CI initially provided the following information to Agent King: defendant was an alien, he had been deported from the United States, he had been in federal prison, the CI knew the defendant personally, defendant's name was Jose Vincente Hernandez-Montez, his dob was 5/7/62, he was living at the Daisy Street address, he was using the name of Alfonso Hernandez, he drove two different vehicles, vehicle no. 1 was a blue and silver Chevrolet pickup with Oregon License Plate WLK670, vehicle no. 2 was a red Toyota pickup with Oregon License Plate YNJ328, he was in a motor vehicle accident in April 2006 and used the name of Alfonso Hernandez, the CI believed that defendant was distributing methamphetamine which he stored in the engine compartment or tail gate of his truck, the CI had not seen the methamphetamine, and, the CI had seen defendant with a firearm.

   Agent King conducted an extensive independent investigation in an attempt to corroborate the CI's information. Agent King successfully established detailed facts concerning defendant's identity, including place of residence, vehicles owned, date of birth, prior prosecutions including
a conviction for Illegal Re-entry in Eugene, Oregon, FBI Identification number, alien file number, National Crime

Information Computer records check, confirmation of a motor
vehicle accident involving Alfonso Hernandez-Montiel on 4/21/06
with a red 1995 Toyota pickup with Oregon License Plate YNJ328,
comparison of DMV and ICE alien file photographs showing the same
individual, surveillance of defendant's Daisy Street residence,
confirmation of Springfield Utility Board records, and
observation of 1993 blue and silver Chevrolet pickup and 1995 red
Toyota pickup with the above noted Oregon License Plate numbers
parked at defendant's residence.

The CI here was not an anonymous tipster requiring a greater
degree of corroboration but was a person whose identity was known
by Agent King.  Agent King was able to independently corroborate
all of the information provided by the CI to Agent King.  The
only statement that Agent King was unable to corroborate was the
CI's information that defendant was distributing methamphetamine.
Agent King therefore appropriately did not seek to search for
illegal drugs with his first search warrant.  The first search
warrant authorized the search and seizure of (1) the person of
Jose Vincente Hernandez-Montez; (2) identification documents; and
(3) firearms and ammunition.

Under a totality of the circumstances analysis, the CI's
information and Agent King's fact-finding allowed the issuing
magistrate to make a lawful probable cause determination that
supported the first warrant to search for and seize the firearm.

Similarly, under a totality of the circumstances analysis, the magistrate also had probable cause to issue a warrant for identification documents.  It is notable that Agent King had more than ten years experience as a Law Enforcement Agent with the Immigration and Naturalization Service and Immigration and Customs Enforcement.  Based on Agent King's training and experience, he knew that aliens who have illegally entered the United States use both genuine and fraudulent identity and other types of documents to enter, remain, obtain employment and obtain other benefits in the United States.  He also stated that he knew that such documents frequently showed the alien's true identity or assumed identify and that aliens who have illegally entered the United States may hide the documents on their persons, in vehicles, residences, outbuildings and garages.  Agent King's affidavit also provided information that defendant used at least one alias, had been issued fraudulent DMV identification and had purchased a trailer using the alias of "Alfonso Hernandez." Agent King also noted that "Alfonso Hernandez" was the utility subscriber at the trailer being used as defendant's residence on Daisy Street.  Magistrate Coffin had sufficient information to find probable cause existed and therefore authorized the search and seizure of defendant's premises for identification documents.

///

///

2. The Second Search Warrant

While the officers were executing the first search warrant at defendant's residence on Daisy Street, they observed unlawful drugs and other evidence of unlawful activity.  Agent King therefore applied for a second search warrant at that location to search and seize illegal drugs, records of drug sales, firearms and ammunition.  The affidavit in support of the second warrant incorporated the affidavit in support of the first warrant.  I find that the second search warrant was lawful for all of the reasons described above finding that the first search warrant was lawful, valid and supported by probable cause.

Moreover, I note that the "plain view" exception to the warrant requirement applies allowing for the seizure of all evidence in plain view.  In order for that exception to apply the initial intrusion must be lawful, and the incriminatory nature of the evidence must be immediately apparent to the officers. United States v. Hudson, 100 F.3d 1409 (9th Cir. 1996).

The seizure of the firearm pursuant to the first search warrant was lawful due to the plain view exception.  The defendant's .38 caliber revolver was found inside a plastic container on a shelf in his bedroom.  This container was also a reasonable location in which identification documents could be found.  The police were aware of defendant's prior felony convictions, and therefore aware that it would have been unlawful

for defendant to possess firearms.  Because the initial search of
the plastic container was lawful, and because the illegal nature
of the firearm was immediately apparent to the officers, seizure
of the firearm was lawful under a "plain view" analysis.
Similarly, the ammunition was discovered in a clear plastic
container on a shelf on defendant's bedroom.  Two boxes of
ammunition were found in the bedroom closet.  These items were
also found in plain view and therefore lawfully seized.

Finally, I find that the good faith exception applies here.
United States v. Leon, 468 U.S. 897 (1984).  The searches
undertaken pursuant to the warrant are lawful because Agent King
and the officers acted in good faith when they relied on the
search warrant.  Neither warrant was so lacking in probable cause
that police believed its existence was entirely unreasonable.

3.  Request for a Franks Hearing

Defendant argues that the affidavits in support of the
search warrants contained intentional or reckless material
misstatements or omissions such that a Franks hearing is
required.  Franks v. Delaware, 438 U.S. 154 (1978).  Under
Franks, the defendant must show that the affiant intentionally or
recklessly omitted information from the affidavit, and the
omitted information was material to a finding of probable cause.
Id. at 155-56.  If the defendant satisfies both requirements of
the Franks test, the defendant is entitled to a hearing in which

the court reexamines the issue of probable cause by taking account of all the intentional or reckless misstatements or omissions.  Id.  Suppression is warranted only if probable cause does not exist when the court considers all this information.

Defendant first contends that Agent King identified the DMV documents as Oregon Drivers Licenses and not as Oregon Identification Cards and therefore the warrant is unlawful.  The record shows, however, that Agent King indicated in his affidavit that defendant obtained the DMV documentation under two different names.  DMV records show that defendant's driving privileges were revoked under the name of Jose Vincente Hernandez and suspended by the DMV under the name of Alfonso Hernandez Montiel.  Agent King also correctly identified the DMV document numbers and correctly associated the names used by defendant with each document.  The warrant was issued to search and seize both genuine and fraudulent documents by which Jose Vincente Hernandez Montez, aka Alfonso Hernandez Montiel may be identified.  Any error by Agent King in calling an Oregon ID card an Oregon Drivers License is not material.  Moreover, based on Agent King's testimony, I do not find the misstatement either reckless or intentional such that a Franks hearing is warranted.  The search and seizure of genuine or fraudulent documents under the authority of the search warrant was lawful.

Defendant next asserts that Agent King failed to advise the

magistrate that his CI was the former mother-in-law of defendant, that she had a deep hatred for defendant, and that she had not personally seen defendant in possession of the firearm.  The government concedes that Agent King did not reveal the CI's relationship to the defendant to the magistrate. I find no evidence that the affiant here intentionally or recklessly disregarded the truth.  Moreover, even if that information was included in the affidavit, I find it would not render the CI's statements unreliable.  Further, there was an adequate factual basis that probable cause existed to support a lawful search for firearms.

Finally, the fact that the CI did not tell Agent King when the CI observed defendant with a firearm is immaterial.  Agent King discovered that information from the CI on July 12, 2006, four days after the execution of the warrant.  The failure of Agent King to include the July 12, 2006 information was neither intentional nor reckless.  Moreover, I find that any omission was immaterial to a finding of probable cause.  In other words, inclusion of this information would not have affected the probable cause determination.

In conclusion, I find no basis for a <u>Franks</u> hearing.  Even if all the statements cited by defendant were incorporated into the affidavit or deleted from the affidavit, I find an adequate factual basis exists to establish probable cause.

<u>CONCLUSION</u>

Defendant's motion to suppress and request for a Franks hearing (doc. 56) is denied.

IT IS SO ORDERED.

Dated this  15   day of April 2008.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge